```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                     SOUTHERN DIVISION at LONDON
```

| | |
|---|---|
| GRACIE PARKER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:08-81-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

                \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 10, 11].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits on December 12, 2005, alleging an onset of disability of March 14, 2002, due to problems with her "[b]ack; nervous condition; ulcers; degenerative disc disease; arthritis; [and] osteoporosis." [AR at 75, 91.] A hearing on her application was conducted on June 8, 2007, and her

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

1

application was subsequently denied by Administrative Law Judge ("ALJ") James P. Alderisio on July 23, 2007.  [AR at 14-23.] Plaintiff timely pursued and exhausted her administrative and judicial remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g).  [*See* AR at 5-10.]

Plaintiff was fifty-three-years-old at the time of the final decision by the ALJ.  She has earned her general education diploma (GED) and completed early childhood development training in order to work at a school.  [AR at 96.]  She has past work experience as a special needs assistant.  [*Id*. at 92]  Plaintiff has not worked since the date of the alleged onset of her disability.

The Administrative Record reveals that Plaintiff's treating physician, Dr. Richard Larson, consulted with her on several occasions for complaints of chronic lower back pain.  On September 27, 2006, for example, Dr. Larson noted "tenderness in the paracervical and paralumbar vertebral musculature," with a "slightly limited range of motion of the lumbar spine" without neurologic deficit.  On October 27, 2006, Plaintiff complained of chronic pain in her lower back, and Dr. Larson noted "tenderness in the lower dorsal and lumbar areas of her law back in the paravertebral musculature" and a "limitation of motion of flexion and full extension of the lumbar spine."  [AR at 359.]  Dr. Ray Hays, another treating physician, noted on June 16, 2005, that she

had a history of chronic pain "and some in the back."[2] [AR at 347.]

Dr. Larson completed a "Physical Capacities Evaluation," dated June 7, 2007. [AR at 392.] In that evaluation, he assessed that Plaintiff could sit for 2 hours, stand for one hour, and walk for one hour in an eight hour work day and could never lift or carry any weight. [*Id.*] He assessed that she could use her hands for simple grasping and fine manipulating, but not pushing and pulling and could not use her feet for repetitive movements as in operating foot controls. [*Id.*] He further assessed that Plaintiff was "not at all" able to bend, squat, crawl, climb, or reach above shoulder level. [*Id.*] He found that she had no restriction of activities involving unprotected heights or driving automotive equipment and had only mild restrictions with regard to being around moving machinery, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases. [*Id.*] He based his limitations on his impressions that she suffered from degenerative disc disease and degenerative arthritis of the cervical and lumbar spine. [*Id.*]

---

[2] Other records from Dr. Hays and the Marymount Medical Center, indicate that she has also been treated for headaches, a synocopal episode, sinusitis, a shoulder contusion, a sore throat likely caused by a viral infection, chest pain, heartburn/GERD, rectal bleeding and abdominal cramps, sinus congestion, and bilateral pain in her upper extremities, that she has had her gallbladder removed, and that she has been diagnosed with osteoporosis. [AR at 127-342, 345-46.]

State agency medical consultant (non-examining) P. Saranga, M.D., completed a Physical Residual Functional Capacity Assessment dated March 29, 2006, in which he offered a primary diagnosis of "nyofascial pain in neck, shoulders" and a secondary diagnosis of "back pain," as well as other alleged impairments: "H/O synocope" and "disc spurs at C5-6, C6-7." [AR at 361.] With regard to Plaintiff's exertional limitations, he assessed that she could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour workday, and had an unlimited capacity for pushing and/or pulling (including the operation of hand and/or foot) controls. [AR at 362.] As to her postural limitations, Dr. Saranga assessed that she could occasionally climb a ramp or stairs, never climb a ladder, rope, or scaffold, frequently stoop, kneel, and crouch, and occasionally crawl. [AR at 363.] Dr. Saranga assessed Plaintiff as having limited ability to reach in all directions, including overhead, and an unlimited ability to handle, finger, and feel. [AR at 364.] Dr. Saranga noted no communicative limitations and, with regard to environmental limitations, found only that she should avoid concentrated exposure to vibration and hazards (machinery, heights, etc.). [AR at 365.]

On July 20, 2007, the ALJ made the following findings of fact in determining that Plaintiff was not entitled to disability

4

benefits:

    1.   The claimant met the insured status requirements of the Social Security Act through June 30, 2007.

    2.   The claimant has not engaged in substantial gainful activity since February 27, 2004, the first day of the unadjudicated period (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

    3.   The claimant has the following severe impairments: disorders of the back, discogenic and degenerative[,] and history of headache/syncope (20 CFR 404.1520(c) and 416.920(c)).

    4.   The claimant does not have an impairment or combination fo impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926).

    5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except she can perform no climbing of ladders, ropes, or scaffolds, and no crawling. She can occasionally climb ramps or stairs. She is precluded from exposure to vibratory and hazardous machinery. She can perform no overhead reaching with the upper extremities. The claimant requires a sit/stand option every 45 minutes.

    6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    7.   The claimant was born on November 6, 1953 and was 50 years old, an individual closely approaching advanced age, on the first day of the unadjudicated period (20 CFR 404.1563 and 416.963).

    8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

    10.  Considering the claimant's age, education, work

> experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from February 27, 2004, the first day of the unadjudicated period, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[AR at 16-22.]

## II. OVERVIEW OF THE PROCESS

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impariment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

As an initial matter, the Court notes that Plaintiff challenges the ALJ's finding that the severity of her impairments

7

or that her impairment or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*See* Record No. 10 at 4.] She has not, however, identified a listing that she believes that her condition might satisfy and offers no further argument in this regard. As Plaintiff has not developed an argument nor identified how the ALJ's determination regarding the severity of impairments allegedly lacks support in the record, this Court declines to formulate an argument on her behalf and will "limit [its] consideration to the particular points that [claimant] appears to raise in her brief on appeal." *Hollon ex rel. Hollon v. Comm'r of Soc. Security*, 447 F.3d 477, 491 (6th Cir. 2006).

Plaintiff avers in her memorandum in support of her Motion for Summary Judgment [Record No. 10-3] that the ALJ erred in determining her physical residual functional capacity (hereinafter, "RFC") because he failed to give adequate weight to the opinions of Plaintiff's treating physicians, Drs. Larson and Hays, as to her exertional and nonexertional limitations. In fact, she argues that the ALJ "completely ignored" their assessments of her limitations. She further argues that the ALJ erred in failing to appreciate that the evidence of record supports a finding that she would be unable to hold a job for a significant period of time or able to work at all under *Gatliff v. Commissioner of Soc. Sec. Admin.*, 172 F.3d 690 (9th Cir. 1999).

There is no merit to Plaintiff's contention that the ALJ completely ignored Drs. Larson and Hays' assessments of Plaintiff's exertional and non-exertional restrictions. In the first instance, Plaintiff has not pointed to any portion of the record which contains such an assessment by Dr. Hays nor can the Court locate one. Further, the ALJ clearly considered Dr. Larson's assessment when evaluating Plaintiff's RFC, writing:

> . . . [a]s for the opinion evidence, Dr. Larson's limitations are excessive when juxtaposed against his own clinical record and that of his colleague Ray Hays, M.D., and the records from the emergency room where no studies ever revealed significantly abnormal findings. The claimant has been maintained on chronic pain medications but it appears this is based most predominantly on subjective complaint.

[AR at 21.] The ALJ ultimately afforded more consideration to the "rationales of the state agency physicians in their determination" because "[b]ased on the overall record, [he] concur[ed] with their conclusion." [*Id.*]

In considering a disability claim, not all doctor's opinions are considered equally. An ALJ should afford different weights to the opinions of physicians, examining and consulting, during his or her review of a claim:

> When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. [20 C.F.R.] § 404.1527(d)(1). The SSA will give the most weight "to opinions from [the claimant's] treating sources, since

9

> these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)...." *Id.* § 404.1527(d)(2). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

*Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *accord Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-46 (6th Cir. 2004).[3]

In determining a claimant's RFC:

> [u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 CFR §§ 404.1527(f)(2), (f)(2)(I).

In this instance, the ALJ has explained that he did not give controlling weight to Dr. Larson's assessment because it was not supported by the medical records presented. He focused on the fact that there were no records of significantly abnormal findings and that Plaintiff's treatment regimen of pain medication had been prescribed on the basis of her subjective complaints. He, instead,

---

[3] Plaintiff asserts that *Wilson* teaches that an ALJ must articulate good reasons for not crediting the opinion of an *examining* source. This is simply not the case.

gave weight to the assessment provided by the non-examining state agency physician because he found it to be more in keeping with the medical evidence presented. Plaintiff argues that "the record is full of evidence" that supports Dr. Larson's RFC questionnaire, but she never cites to any specific evidence in her argument. [Pl. Brief at 4.] Plaintiff, not the Commissioner and certainly not this Court, bears the burden of producing evidence to support her case. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c); *Casey v. Secretary of Health and Human Service*, 987 F.2d 1230, 1233 (6th Cir. 1993). That said, having reviewed the administrative record, the Court is persuaded that the ALJ's finding as to Plaintiff's RFC is supported by substantial evidence.

Finally, the Court notes that Plaintiff's reliance on *Gatliff v. Commissioner of Soc. Sec. Admin.*, 172 F.3d 690 (9th Cir. 1999), is misplaced as Plaintiff has not identified nor has the Court been able to locate evidence in the administrative record which suggests that Plaintiff is incapable of sustaining employment for a significant duration even though she is otherwise capable of working full-time.

Having reviewed the record of this matter, this Court finds that the ALJ's findings as to Plaintiff's RFC are supported by substantial evidence of record. The decision rendered by the ALJ and adopted by the Commissioner is affirmed.

**V.   CONCLUSION**

For the foregoing reasons, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 11] be, and the same hereby is, **GRANTED.**

(2) That the plaintiff's motion for summary judgment [Record No. 10] be, and the same hereby is, **DENIED.**

This the 6th day of February, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge